| | |
|---|---|
| JORGE M-C.,[1]<br><br>    Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,[2]<br><br>    Defendant. | No. 24-CV-3030-LTS-KEM<br><br>**REPORT AND RECOMMENDATION** |

    Plaintiff Jorge M-C. seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(f). Plaintiff argues the administrative law judge (ALJ) erred in denying benefits. Plaintiff asks the court to reverse the Commissioner's decision and award benefits. I recommend **reversing** the Commissioner's decision and remanding for further proceedings.

## I. BACKGROUND

    Plaintiff was born in 1962 and 61 years old at the time of the underlying proceedings. AR 43, 1067.[3] He reported being a prisoner of war and enduring torture by the military in El Salvador in the 1980s. AR 41-42, 1067. Plaintiff obtained a master's degree and was an ordained minister. AR 43-44, 1069. He had experience

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Substituted for the predecessor in accordance with Federal Rule of Civil Procedure 25(d).

[3] "AR" refers to the administrative record below (Doc. 5).

working as a chaplain and pastor, a paraeducator, a housekeeper at a university, an appliance assembler, supervising adults in a residential facility, as a part-time material handler at FedEx, and at a youth shelter (most recently in June 2023).[4]  AR. 43-45.

Plaintiff filed for DI benefits in November 2020 and for SSI benefits in March 2021, alleging he became disabled on June 11, 2020, due to depression, memory problems, PTSD,[5] widespread arthritis, anxiety, and back pain.  AR 10, 66, 77.  The Commissioner denied benefits on initial review and upon reconsideration.  AR 75-76, 86-88, 99-100, 111.  At Plaintiff's request, an ALJ held an administrative hearing on July 10, 2023, at which Plaintiff and vocational expert (VE) testified.  AR 10, 37-38.

On August 8, 2023, the ALJ issued a written opinion following the five-step process outlined in the regulations.[6]  AR 10-24.  The ALJ concluded that Plaintiff had engaged in substantial gainful employment activity from October 2022 to March 2023, but because the finding was not dispositive, the ALJ continued to the next step.  AR 13.  The ALJ found Plaintiff's depressive disorder, anxiety disorder, and PTSD to be severe, but not his physical impairments.  AR 13-15.  The ALJ next determined that Plaintiff's severe impairments did not meet or equal a listing.  AR 15-16.  The ALJ found Plaintiff had the following RFC[7]:

---

[4] Plaintiff performed some work during the alleged disability period, further addressed herein.

[5] Post-traumatic stress disorder.

[6] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work."  *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)**.  The claimant bears the burden of persuasion to prove disability.  *Goff*, 421 F.3d at 790.

[7] Residual functional capacity (RFC) means "the most that a claimant can do despite her limitations."  *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 404.1545(a)(1)**).

medium work [with postural limitations]; and limited to simple, routine tasks involving simple work-related decisions with occasional contact with the public.

AR 16-21. The ALJ found Plaintiff could not perform any past relevant work. AR 21-22. The ALJ found that based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform other work as a hand packager, laundry worker, or laboratory equipment cleaner. AR 22-23. Thus, the ALJ found Plaintiff not disabled from the alleged onset date (June 11, 2020), through the date of the decision (August 8, 2023). AR 23-24.

The Appeals Council denied Plaintiff's request for review on May 1, 2024 (AR 1-3), making the ALJ's decision that Plaintiff was not disabled the final decision of the Commissioner.[8] Plaintiff filed a timely complaint in this court. Doc. 1.[9] The parties briefed the issues (Docs. 7, 9, 12) and the Honorable Leonard T. Strand, District Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[10] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[11] The court "do[es] not reweigh the evidence or review the factual record de novo."[12] If, after reviewing the evidence, "it is possible to draw two inconsistent

---

[8] *See* **20 C.F.R. §§ 404.981, 416.1481**.

[9] *See* **20 C.F.R. § 422.210(c)**.

[10] *Grindley*, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

[11] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

[12] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

3

positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[13]

Plaintiff argues the ALJ erred in various ways: (1) not adopting a persuasive medical opinion and reaching a mental RFC with Level 2 reasoning (instead of Level 1 reasoning); (2) not providing sufficient reasons for finding a different medical opinion only partially persuasive; (3) finding Plaintiff capable of medium work as opposed to light work and lacking some medical evidence for the physical RFC finding; and (4) failing to further develop the record about Plaintiff's work activities (including a failed work attempt). Plaintiff asserts that these errors resulted in an RFC that is not supported by substantial evidence nor some medical evidence (for the physical limitation of medium work).

### A. Mental RFC Limitation – Reasoning Level – "Simple, Routine Tasks" Versus "Short and Simple Instructions"

In determining Plaintiff's mental RFC, the ALJ found the opinion by a consultative examiner (CE) to be persuasive but used different language than that used by the CE. Plaintiff argues the ALJ failed to adequately explain this difference. Plaintiff also asserts that the CE's opinion limited Plaintiff to a lower reasoning level than the ALJ included in the hypothetical to the VE and ultimate RFC determination. As a result, Plaintiff believes the ALJ's decision is not supported by substantial evidence.

Rosanna M. Jones-Thurman, Ph.D, conducted a consultative examination of Plaintiff's mental functioning on March 23, 2022. AR 736-41. Results of the examination showed normal findings, except that Plaintiff could not complete serial seven or serial three tests, correctly spell backwards, engage in abstract reasoning by solving similarities or differences, or interpret a proverb. Dr. Jones-Thurman found Plaintiff

---

[13] ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

"appeared to be of low average intellectual ability with arithmetic problems" (AR 739), had no issues with thought processing or content, could sustain attention and concentration, and maintain pace. Dr. Jones-Thurman concluded that Plaintiff could "remember and understand **short and simple instructions**" and "carry out **short and simple instructions** under ordinary supervision." AR 740.

The ALJ found this opinion persuasive, noting it was supported by findings from the examination and consistent with the other evidence in the record. AR 21. The ALJ's RFC determination and hypothetical posed to the VE varied, however, and limited Plaintiff to **simple, routine tasks involving simple work-related decisions**. AR 16, 62.

Both parties recognize that an ALJ need not adopt the exact limitations from a persuasive medical opinion.[14] An ALJ must explain any inconsistency between the limitations in a persuasive medical opinion and those used in the ALJ's RFC determination.[15] When an ALJ fails to capture a claimant's limitations in the hypothetical posed to a VE, "the VE's testimony cannot be viewed as substantial evidence that [claimant] can perform other work in the national economy."[16] Likewise, "an ALJ may not rely on a [VE]'s testimony about the requirements of a job if an 'apparent unresolved conflict' exists between the VE's testimony and the job's description in the Dictionary of

---

[14] *See Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023); *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022).

[15] *Carey v. O'Malley*, Case No. 4:23-CV-00860, 2024 WL 4238691, at *5 (E.D. Mo. Sep. 19, 2024) (discussing, in part, that an ALJ's failure to explain may prevent the reviewing court from determining whether substantial evidence supports the ALJ's decision); *Dowden v. Saul*, No. 19-CV-2054, 2020 WL 6470180, at *7 (N.D. Iowa Nov. 3, 2020) (under updated regulations for evaluating medical opinions (applicable in this case), an ALJ must still explain a failure to adopt a limitation from a persuasive medical opinion).

[16] *Gann v. Berryhill*, 864 F.3d 947, 952-53 (8th Cir. 2017) (remanding decision where ALJ's hypothetical and RFC determination omitted a limitation from medical opinions the VE found to be credible and worthy of "significant weight" under the prior regulations on weighing medical opinions).

5

Occupational Titles (DOT)."[17] This type of conflict may exist when a VE identifies jobs that require Level 2 reasoning under the DOT, but the ALJ's hypothetical and RFC determination limit the claimant to Level 1 reasoning.[18]

> Level 2 Reasoning . . . requires a worker to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "deal with problems involving a few concrete variables in or from standardized situations." Level 2 Reasoning is a step above Level 1 Reasoning, which requires a worker to "apply commonsense understanding to carry out one- or two-step instructions" and to "deal with standardized situations with occasional or no variables in or from those situations encountered on the job."[19]

Plaintiff asserts that Dr. Jones-Thurman's limitation to **short** and simple instructions equates to Level 1 Reasoning, while the ALJ's limitation (to simple, routine tasks) allows for Level 2 reasoning.[20]

Even assuming no inconsistency exists between the term "tasks" and "instructions," the term "short" has significance in this case.[21] Decisions in the Fourth

---

[17] *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018) (quoting *Moore v. Colvin*, 769 F.3d 987, 989-90 (8th Cir. 2014)). "The [DOT] provides 'standardized occupational information' by listing the functional requirements for a number of jobs available in the national economy." *Stanton v. Comm'r Soc. Sec. Admin.*, 899 F.3d 555, 558 (8th Cir. 2018).

[18] *Stanton*, 899 F.3d at 558-59.

[19] *Id.* at 558 (cleaned up) (quoting **DOT**, **App. C** (4th rev. ed. 1991)).

[20] It appears clear that the ALJ found Plaintiff capable of Level 2 reasoning—the ALJ discussed how Plaintiff's ability to drive shows he can apply information requiring **more than two steps**. AR 18.

[21] *See Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019) (assuming, without deciding, that "tasks" and "instructions" are synonymous but finding "'[s]hort' is inconsistent with 'detailed'"); *see e.g., Foster v. Kijakazi*, No. 20-CV-2058, 2022 WL 412729, at *27 (N.D. Iowa Jan. 25, 2022) (finding "tasks" and "instructions" synonymous in context of one- to two-step reasoning limitation).

Circuit and Ninth Circuit have found a conflict may exist because the ability to perform "short, simple instructions" may not be compatible with both Level 2 reasoning.[22]

> [L]evel-one jobs require only "simple one-or two-step instructions" but level-two jobs require "detailed but uninvolved instructions." Both reasoning levels require simple (or "uninvolved") instructions. The key distinction between those two levels is that level-one jobs require instructions involving at most two steps, whereas level-two jobs may require "detailed"—that is, potentially longer— instructions. A level-two job with "detailed but uninvolved instructions" could require an employee to follow <u>lengthy</u> simple instructions.[23]

Though the term "simple" is compatible with "detailed and uninvolved," the same is not true for "short" and "detailed."[24]

---

[22] *Leach v. Kijakazi*, 70 F.4th 1251, 1256-57 (9th Cir. 2023) (finding ALJ improperly relied on VE testimony where ALJ omitted "short" in hypothetical posed to VE ("simple job instructions") that was included in RFC determination ("short, simple instructions") because it "describe[ed] a hypothetical person with greater functional capacity than [the c]laimant possesses"); *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019) (finding apparent conflict between VE testimony about job requiring Level 2 reasoning and person limited to "short, simple instructions" because claimant with that limitation "may not be able to carry out detailed but uninvolved instructions" (i.e. Level 2 reasoning)); *Keller v. Berryhill*, 754 F. App'x 193, 197-98 (4th Cir. 2018) (relying in part on *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010), in finding limitation to "short and simple instructions" "falls somewhere between Levels 1 and 2 [reasoning]. That is, a short and simple instructions restriction shares the word 'simple' with the level 1 definition but could permit instructions of more than two steps . . . [but] it is not entirely clear to us that a person limited to short and simple instructions could also carry out Level 2 jobs that include 'detailed but involved' instructions"); *see also Lawrence*, 941 F. 3d at 143 (distinguishing *Thomas* and finding no apparent conflict because RFC did not include "short" in limitation on instructions).

[23] *Leach*, 70 F.4th at 1256-57 (cleaned up) (citations omitted); *see also Lawrence*, 941 F.3d at 143 ("there is no conflict between 'simple' and 'uninvolved' instructions, as both connote instructions that 'are not complicated or intricate'" (quoting *Moore*, 623 F.3d at 604)).

[24] *Leach*, 70 F.4th at 1256-57 (discussing how "detailed" may mean longer—"'detailed but uninvolved . . . instructions' could require an employee to follow <u>lengthy</u> simple instructions" as opposed to "<u>short</u>, simple instructions"); *Lawrence*, 941 F.3d at 143; *see e.g., Galloway v. Kijakazi*, No. 20-CV-00059, 2021 WL 5278545, at *23, 25 (N.D. Iowa Sep. 2, 2021) ("Although the instructions for a reasoning level two job may be detailed, they are also, by definition 'not complicated, i.e. simple"), *report and recommendation adopted*, 2021 WL 4399719, *aff'd,* 46 F.4th 686 (8th Cir. 2022) (recognizing suggestion in dicta in prior case "that there may be a conflict between the ability to understand and carry out simple instructions and

> "Short" is inconsistent with "detailed" because detail and length are highly correlated. Generally, the longer the instructions, the more detail they can include. . . . [D]etailed instructions are, in the main, less correlated with complexity than with length. Instructions often include many steps, each of which is straightforward. Driving directions are a good example: they may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive.[25]

A person "limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions[, although] . . . some instructions, particularly if they are well-drafted, may be simultaneously short, simple, detailed, and uninvolved."[26] These courts have found remand necessary when the ALJs failed to resolve the conflict between a "short" instructions limitation and jobs requiring Level 2 reasoning.[27]

The Eighth Circuit has found no direct conflict exists between a limitation to "simple job instructions" and jobs "involving instructions that, while potentially detailed, are not complicated or intricate" (i.e. Level 2 reasoning).[28]

> [T]he ALJ did not limit "simple" job instructions to "simple one- or two-step instructions" or otherwise indicate that [claimant] could perform only occupations at a *DOT* Level 1 reasoning level. Indeed, the Level 2 reasoning definition refers to "detailed but *uninvolved*" instructions. The dictionary defines "uninvolved" as "not involved," and in turn defines "involved" as "complicated, intricate."

---

the ability to carry out detailed instructions" but ultimately agreeing hypothetical and RFC could be harmonized with the DOT).

[25] *Lawrence*, 941 F.3d at 143.

[26] *Thomas*, 916 F.3d at 314.

[27] *See Leach*, 70 F.4th at 1257 (finding reversible error where ALJ left "short" out of "simple job instructions" limitation in hypothetical because it resulted in a "hypothetical person with greater functional capacity than [c]laimant possesses"); *Thomas*, 916 F.3d at 314 (remanding for ALJ to resolve apparent conflict between RFC limitations to "short, simple instructions" and VE testimony identifying jobs with Level 2 reasoning).

[28] *Moore*, 623 F.3d at 604; *see also April A. v. O'Malley*, No. 22-cv-2719, 2024 WL 1136792, at *1, *4 (D. Minn. Mar. 15, 2024) (finding RFC limitation to "simple, routine tasks" consistent with ability to perform Level 2 reasoning) (collecting cases).

> Moreover, the Level 2 reasoning definition is an upper limit across all jobs in the occupational category, not a requirement of every job within the category.[29]

Based on this reasoning, courts within the Eighth Circuit have found the inclusion or absence of "one- to two-step tasks"[30] significant in determining whether a limitation restricts a claimant to Level 1 reasoning.[31] It does not appear these or other cases from the Eighth Circuit address how the term "short" impacts reasoning level, and whether it correlates to Level 1 reasoning, Level 2 reasoning, or both.

I find the reasoning from the Fourth and Ninth Circuits to be persuasive—the term "short" may not allow for carrying out "detailed" instructions. Consistent with that finding, I also conclude a potential conflict exists when a claimant is limited to "short" instructions and a VE identifies jobs requiring Level 2 reasoning. Although "short" instructions may be consistent with Level 2 reasoning in some instances, the ALJ must obtain VE testimony addressing the apparent conflict. If an ALJ fails to resolve such conflict, substantial evidence will not support the ALJ's decision to rely on the VE's testimony.

Accordingly, even if the ALJ's use of "tasks" in place of "instructions" (used by Dr. Jones-Thurman) may be consistent, the same is not true of the ALJ's omission of the term "short" (also included in Dr. Jones-Thurman's persuasive opinion). Because the

---

[29] *Moore*, 623 F.3d at 604 (citations omitted).

[30] Neither Dr. Jones-Thurman nor the ALJ found Plaintiff limited to tasks involving only 1- to 2-step commands.

[31] *See Stanton*, 899 F.3d at 557 (finding inclusion of "simple one- to two-step instructions" correlates to Level 1 reasoning); *Thomas*, 881 F.3d at 677-78 (finding conflict between limitation to "complexity of '1 to 2 step tasks'" corresponds to Level 1 reasoning); *Foster*, 2022 WL 412729, at *26 (concluding that while RFC and VE hypothetical said "simple, routine tasks," ALJ limited claimant to Level 1 reasoning based on reading RFC with ALJ's entire opinion, which used the language "one- and two-step tasks"); *see, e.g., Dowden*, 2020 WL 6470180, at *7-8 (finding limitation involving "one to two step commands" or "one- or two step tasks" meant Level 1 reasoning).

ALJ did not explain why this term was not adopted, "it is unclear whether the ALJ believed [the] RFC determination captured this limitation, or whether the ALJ found this limitation unsupported or inconsistent with the record."[32]

> While the ALJ does not have to incorporate every limitation recommended by medical evaluators, the decisions about which limitations to include or exclude must be well-supported by evidence and **clearly explained** . . . . [T]he ALJ has a **duty to clearly articulate** the rationale linking the evidence to her findings. It is improper for a court reviewing such decisions to guess at the ALJ's reasoning or manufacture justifications that the ALJ herself did not provide.[33]

Because I find the term "short" has significance, the ALJ erred by not explaining why it was not included in the relevant hypothetical or RFC determination, and by failing to resolve the potential conflict of whether Plaintiff—if limited to "short, simple instructions"—could perform the Level 2 reasoning jobs identified by the VE.[34]

I recommend reversing and remanding on this issue.

### B. Medical Opinion Evidence – Missing Two Days Per Month

Plaintiff argues the ALJ failed to provide sufficient analysis in weighing the medical opinion from the nurse practitioner (NP) who managed Plaintiff's medications. Plaintiff also argues the ALJ erred by not adopting a limitation from that opinion. Under regulations applicable in this case, an ALJ must evaluate the persuasiveness of medical opinions by considering: "(1) whether it is supported by objective medical evidence and

---

[32] *Dowden*, 2020 WL 6470180, at *8 (noting ALJ found medical opinion that used omitted limitation to be persuasive—both consistent with the record and well-supported).

[33] *Jason L. v. O'Malley*, No. 23-184, 2024 WL 965240, at *2 (D. Minn. Mar. 6, 2024) (emphasis added) (questioning "whether the ALJ improperly replaced the term 'superficial' with 'occasional,' or deliberately decided against including a limitation on superficial interactions for another reason.").

[34] *See Stanton*, 899 F.3d at 559-60 (remanding where ALJ failed to adequately address apparent conflict between VE testimony and the DOT, explaining how the ALJ's work was insufficient to resolve the apparent conflict).

the provider's own explanations, (2) whether it is consistent with other evidence in the record, (3) the relationship the provider has with the claimant, (4) the provider's specialization, and (5) any other relevant factors."[35] "Supportability and consistency are the most important factors."[36]

Simi Tran, ARNP, completed a "Mental Impairment Questionnaire" and evaluated Plaintiff's mental abilities in sixteen areas. AR 2040-46. For fifteen of the sixteen categories, NP Tran found Plaintiff's abilities unlimited to limited but satisfactory. She found Plaintiff seriously limited in the remaining category—ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. NP Tran opined that Plaintiff would miss around two days of work per month. Overall, the ALJ found NP Tran's opinion somewhat persuasive. AR 21. The ALJ recognized Plaintiff received treatment from NP Tran and found her opinions in fifteen of the sixteen areas supported by her own treatment records and the overall record as discussed in the opinion. The ALJ found NP Tran's conclusion that Plaintiff had a serious limitation in the remaining category and would require absences "conclusory and devoid of any citation to the record for support." AR 21. The ALJ provided this additional explanation:

> [NP Tran] clarified that there are problems with medication compliance and that [Plaintiff] will typically do well when compliant yet did not clarify that these espoused limitations are when [Plaintiff] is taking his medications or not. Moreover, [NP Tran]'s own treatment notes support that [Plaintiff] does well at work when taking his medication.

*Id*.

While discussing the overall medical evidence earlier in the decision, the ALJ noted that NP Tran provided "medication management of recurrent major depressive disorder, in partial remission, and chronic PTSD, with compliance issues." AR 18. The

---

[35] *Cropper v. Dudek*, 136 F.4th 809, 813 (8th Cir. 2025); **20 C.F.R. §§ 404.1520c, 416.920c**.

[36] *Cropper*, 136 F.4th at 813.

11

ALJ cited NP Tran's mental status examinations showing Plaintiff had no loose associations or perception abnormalities, normal thought process, intact insight, and fair to intact judgment. The ALJ also observed that NP Tran noted Plaintiff "feels better or improves on medication or his medications work well when compliant." *Id*. The ALJ further addressed Plaintiff's medication noncompliance: Plaintiff had a relapse in February 2023 after "stopping medication in November for no specific reason and [had been] doing better on the medication"; "[w]hen not medication compliant his judgment is poor"; and in June 2023, Plaintiff "was not taking Lexapro or trazodone consistently but denied hallucinations." *Id*. The ALJ then wrote that Plaintiff was hospitalized in August 2020, May 2022, June 2023 (twice that month, once for a court-ordered psychiatric evaluation) and that his symptoms were "noted as moderate and when his mood stabilized on medication he was discharged." *Id*.

Plaintiff argues that the ALJ erred by not adopting NP Tran's limitation of missing two days of work per month. Plaintiff asserts the ALJ failed to evaluate the supportability factor or point to inconsistencies in NP Tran's opinion (although Plaintiff concedes to inconstancies in his brief). Plaintiff also argues the ALJ improperly relied on Plaintiff's noncompliance with medication.

An impairment that can be controlled by medication is generally not disabling, and a claimant's failure to comply with prescribed treatment may provide a good basis for an ALJ to find a medical opinion less persuasive.[37] Certain circumstances may justify a complaint's noncompliance, including if a claimant's "noncompliance was attributable to

---

[37] *Wildman v. Astrue*, 596 F.3d 959, 965-66 (8th Cir. 2010).

[his] mental illness."[38]  "Whether severe mental illness has resulted in justifiable noncompliance is a fact-intensive issue."[39]

Here, the ALJ's decision does not address why Plaintiff failed to take his medications. Nor does the ALJ acknowledge that Plaintiff was diagnosed with schizoaffective disorder and bipolar disorder (records from Plaintiff's hospitalizations show he exhibited bizarre, paranoid, and erratic behavior; delusional thinking and response to internal stimuli; and "evidence of possible psychotic thought processes" and "paranoid ideation"). AR 752, 757, 769, 771-72, 777, 2048-49, 2097, 2132, 2137-38. Those records also discuss Plaintiff's medication noncompliance and the use of antipsychotic medication injections. AR 2049-50 (reported stopping haloperidol[40] because affects driving; ordered haloperidol and lorazepam injections); 2138 (started Invega Sustenna).[41] The ALJ also did not address the use of injectable antipsychotic medications. NP Tran's own records generally do not address why Plaintiff had compliance issues. AR 936 (stopped all medications for two months, restarted on his own); AR 984 (not taking buspirone as prescribed); AR 1069 (stopped taking medications for period of time but restarted them); AR 1809 (had not scheduled monthly haloperidol injection, which was due); AR 1885 (failed to increase Lexapro dose since prior visit, confused about doing so); AR 1926 (occasionally forgot to take medication due to fluctuating work schedule); AR 1957 (stopped all psychiatric medications four months

---

[38] *Pate-Fires v. Astrue*, 564 F.3d 935, 945-46 (8th Cir. 2009); *see also* **Soc. Sec. Ruling (SSR) 18-3p, Failure to Follow Prescribed Treatment**, 83 Fed. Reg. 49616 (Oct. 2, 2018) (rescinding and replacing SSR 82-59).

[39] *Hensley v. Colvin*, 829 F.3d 926, 935 (8th Cir. 2016).

[40] Haloperidol is "used to treat psychotic disorders (conditions that cause difficulty telling the difference between things or ideas that are real and things or ideas that are not real)." *Kristopher T.T. v. O'Malley*, No. 23-cv-359, 2024 WL 1286040, at *2 n.4 (D. Minn. Mar. 26, 2024).

[41] "Invega Sustenna is an antipsychotic drug administered monthly to treat mood disorders such as schizophrenia and schizoaffective disorder." *Reed v. Rawlani et al.*, No. 4:23-CV-668, 2023 WL 5377628 (E.D. Mo Aug. 22, 2023).

prior for no specific reason, says he gradually forgot to take it while working part time). Nor does it appear NP Tran had records from Plaintiff's more recent hospitalizations. NP Tran's notes do mention concern about possible hypomania[42] or mania in June 2023 (AR 1948, 1952) and acknowledge Plaintiff's haloperidol injections (AR 927, 1813, 1886).[43]

Because the ALJ fails to address the issue, it is unclear whether Plaintiff's medication noncompliance was justified. Accordingly, the ALJ improperly relied on this factor to find a portion of NP Tran's opinion unpersuasive.[44] In addition, if the ALJ had not relied on this improper factor, it could have resulted in a finding that Plaintiff is disabled. *See* AR 63-63 (VE testified that no jobs exist for hypothetical person with same RFC used by ALJ if the person would miss two days of work per month).

I recommend reversing on the ALJ's evaluation of NP Tran's opinion.

### C. *Exertion Level Limitation Based on Lifting and Carrying Ability*

In addition to his mental impairments, Plaintiff alleged disability due to widespread arthritis and back pain. AR 66, 77. Because of a lack of medical records on these impairments, Plaintiff underwent a consultative examination by Brian Allen, DO. AR

---

[42] Hypomania is "a less severe form of mania" often associated with bipolar disorder. *Marker v. Colvin*, No. 13-6079, 2014 WL 1577764, at *9 n.11 (W.D. Mo. Apr. 21, 2014).

[43] The record also shows Plaintiff has had issues with alcohol and cannabis abuse (which appeared to decrease over time). AR 766-67, 1017, 1020, 1026-27, 1044, 1813, 2097, 2137, 2153-54. A claimant's abuse of alcohol or drugs may be a symptom of the claimant's mental impairment. *See Conklin v. Astrue*, 360 Fed App'x 704, 706 (8th Cir. 2010).

[44] *Pate-Fires*, 564 F.3d at 945-47 (ALJ's finding that medical noncompliance warranted denial of benefits not supported by substantial evidence where ALJ failed to consider whether claimant's mental impairment justified the noncompliance); *see, e.g.*, *Watkins v. Astrue*, 414 F. App'x 894, 896 (8th Cir. 2011) (finding ALJ opinion not supported by substantial evidence, in part, because substantial evidence did not support ALJ discounting claimant's alleged disabling symptoms based on noncompliance where recent treatment records showed worsening symptoms and medication noncompliance).

14

722-28; *see also* 730, 732-33 (x-ray results). Dr. Allen found normal results during examination, except for limited range of motion in Plaintiff's lumbar spine (but no tenderness) and tenderness at both knee joints (but normal range of motion). Dr. Allen diagnosed low back pain secondary to myofascial or facet pathology and bilateral knee pain secondary to degenerative joint disease. He provided no opinions about Plaintiff's functional abilities or limitations.

During the initial and reconsideration reviews, state agency consultants found Plaintiff's severe physical impairments limited him to light work[45] but with a heavier weight capacity for lifting and carrying—25 pounds occasionally and 20 pounds frequently. AR 69-71, 93-94. Their opinions discussed the limited record regarding Plaintiff's physical issues and summarized inconsistencies: his joint pain came and went with no ongoing cause identified; he generally had normal range of motion (except for his knees); he did not seek continuing care for physical issues—most of his health care visits were for mental health issues; and he was quite active despite his complaints of pain. At the administrative hearing, Plaintiff testified, in response to questions from the ALJ and the VE, that he could lift between 15 and 30 pounds but had "difficulty handling something real heavy."[46] AR 47, 56. At step two, the ALJ concluded Plaintiff's physical impairments were not severe.[47] AR 13-15. The ALJ still considered the impact of

---

[45] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and may "require[] a good deal of walking or standing." **20 C.F.R. §§ 404.1567(b), 416.967(c)**.

[46] When questioned by the VE about the weight involved in his prior jobs, Plaintiff responded: minister (most recently in 2014 or 2016) 40 pounds but "after [he] had [his] breakdown" he could only lift between 20 and 40 pounds; housekeeping (in 2016 and 2017) "very heavy" items, up to 100 pounds; and appliance assembly (later in time) up to 30 pounds. AR 44-45, 58-60.

[47] Plaintiff does not directly challenge the ALJ's step two conclusion, but as part of his argument states: "If the ALJ was faithfully applying the de minimus standard step two concerning severity of impairments, he would have found [Plaintiff]'s lumbar spine and knee impairments, observed and diagnosed sufficiently during the consultative examination, to be severe impairments as the agency medical consultants had." Doc. 7 at 25-26. Even if the ALJ erred at step two in finding

15

Plaintiff's physical impairments in determining his RFC and ultimately limited Plaintiff to medium work.[48]  AR 15-16.

The ALJ recognized that the state agency consultants limited Plaintiff to "a range of light work . . . with increased exertional (occasionally lift/carry 25 pounds and frequently lift/carry 20 pounds)."  AR 20.  The ALJ adopted the postural restrictions from the consultants' opinions but found the exertional level not supported by the cited records nor Plaintiff's daily activities.  The ALJ concluded that a limitation "to medium work adequately accounts for [Plaintiff's] physical impairments."  AR 20.

Plaintiff believes he should have been limited to light work based on his capacity to lift and carry weight.  Plaintiff asserts the ALJ failed to explain or provide good reasons for rejecting the state agency consultants' opinions that he was limited to less than medium work and that the ALJ's finding that Plaintiff can perform medium work is not supported by some medical evidence.  While an RFC assessment is an administrative determination left to the ALJ, it must be based on medical evidence in the record that supports the

---

Plaintiff's physical conditions non-severe, any error is harmless because the ALJ considered Plaintiff's pain and its limiting effects when determining his RFC for steps four and five.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1265-66 (10th Cir. 2008) ("any error" in determining severe impairments at step two "became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"); *Bryant v. Astrue*, No. 4:12-CV-177, 2013 WL 571761, at *4 (E.D. Mo. Feb. 13, 2013) (any error in failing to find impairment severe at step two was harmless where ALJ proceeded to next steps and considered impact of non-severe impairment in determining claimant's RFC) (collecting cases).

[48] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  **20 C.F.R. 404.1567(c)**, **416.967(c)**.

ALJ's conclusions.[49] "The ALJ may not impose fewer limitations than found in all the medical-opinion evidence and thereby formulate his own medical opinion."[50]

The ALJ's written decision found Plaintiff capable of performing "medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." AR 16. In contrast, the hypothetical the ALJ posed to the VE limited Plaintiff to "**less than a full range of medium work**" (along with the remaining limitations included in the ultimate RFC determination). AR 62. The VE then identified the three jobs on which the ALJ relied in denying disability, which each require medium work: laundry worker, hand packager, and laboratory cleaner. AR 62-63. It is not clear what the ALJ meant by "less than" full medium work. It is possible that by "less than full range of medium work," the ALJ meant the same weight restriction included in the state agency consultants' opinions (25 pounds occasionally and 20 pounds frequently). This seems doubtful, however—the ALJ specifically found the state agency consultants' "opinion as to the level of exertional limits is not supported by the cited records and level of daily activities at the time or consistent with the evidence at the hearing." AR 20. By saying "less than a full range of medium work," the ALJ may have also simply meant that Plaintiff suffered mental limitations (and therefore could not do all medium work jobs).

The ALJ failed to make clear what was meant by "less than" medium work in the hypothetical posed to the VE. Nor did the ALJ acknowledge or explain the difference between that hypothetical and the actual RFC limitation to medium work (without any qualification). It appears the ALJ rejected the only medical opinions about the weight

---

[49] *Linden v. Colvin*, No. 7:15-CV-5005, 2017 WL 1377924, at *4 (D. Neb. Apr. 14, 2017) (concluding the ALJ's physical RFC determination lacked support from medical evidence and the ALJ failed to sufficiently develop the record by reaching a physical RFC, without explaining its basis, after finding the medical opinions in evidence unpersuasive).

[50] *Hall v. Saul*, No. 19-CV-3019, 2020 WL 5229539, at *6 (N.D. Iowa May 27, 2020) (collecting cases), *report and recommendation adopted,* 2020 WL 3121226 (June 12, 2020).

Plaintiff could lift and carry and found him less limited than those opinions. Accordingly, I do not find the ALJ's RFC opinion is supported by some medical evidence.

I recommend reversing and remanding on this issue.

### D. Developing the Record – Work Activities

During step one, an ALJ must determine whether a claimant worked after the alleged onset date and if so, whether that work qualified as "substantial gainful activity," making the claimant ineligible for benefits.[51] Even if a claimant performed work that would meet the earnings requirement to qualify as substantial gainful activity, it could be considered an "unsuccessful work attempt" and not require denial of benefits if the work lasted six months or less because an impairment required the claimant to stop working or reduce work to the point that earnings fell below substantial gainful activity.[52]

Here, the ALJ found Plaintiff engaged in substantial gainful activity from October 2022 through March 2023—the last quarter of 2022 and the first quarter of 2023. AR 13. The ALJ found this did not preclude Plaintiff from receiving benefits, however, because Plaintiff had continuous twelve-month periods during the relevant time without substantial gainful activity (AR 13) and proceeded through the rest of the evaluation steps. The ALJ ultimately concluded Plaintiff was not disabled from June 11, 2020, through August 8, 2023. AR 23-24.

Plaintiff argues the ALJ erred in not considering whether work Plaintiff performed after the alleged onset date was an unsuccessful work attempt. Plaintiff concedes, however, that even if the ALJ erred, it would be harmless. A court "need not decide whether [claimant] engaged in substantial gainful activity" when "the ALJ explicitly [finds claimant] was not disabled from his alleged onset date through the date he was last

---

[51] **20 C.F.R. §§ 404.1520(a)(4)(i), (b)**, **416.920(a)(4)(i), (b)**.

[52] **20 C.F.R. §§ 404.1574(c)**, **416.974(c)**.

insured."[53] Plaintiff invites the court to still weigh in on this issue to determine whether cumulative errors require reversal. I decline to take up this invitation.

I recommend finding that any error in considering Plaintiff's work activity was harmless.

### III. CONCLUSION

I recommend **reversing** the decision of the Social Security Administration and remanding for further proceedings.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[54] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[55]

**DATED** August 29, 2025.

_____
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[53] ***Renstrom v. Astrue***, 680 F.3d 1057, 1068 (8th Cir. 2012).

[54] **Fed. R. Civ. P. 72**.

[55] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).